# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JEFFERY D. MUNNERLYN, | CASE NO. 2:08-cv-229 |
| | CRIM. NO. 2:04-CR-183 |
| Petitioner, | JUDGE SARGUS |
| | MAGISTRATE JUDGE KEMP |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

## PROCEDURAL HISTORY

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> On October 21, 2004, a grand jury for the Southern District of Ohio returned a six-count indictment against Munnerlyn. In Counts 1, 3, and 5 of his indictment, Munnerlyn was charged with armed robbery of the Heartland Bank in Grove City, Ohio on April 1, 2004, June 11, 2004, and September 8, 2004, in violation of 18 U.S.C.§ 2113(a) and (d). Counts 2, 4, and 6 charge Munnerlyn with using and carrying a firearm during and relation to those three bank robberies, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (iii). Following a jury trial at which Munnerlyn represented himself, he was found guilty on all six counts and subsequently sentenced to 798 months.

> \*\*\*
>
> At trial, the government presented the testimony of several bank employees who identified Munnerlyn as the man who robbed their bank on April 1, 2004, and June 11, 2004. Bank employee Patricia Greisenauer stated that Munnerlyn entered the bank with a firearm, threatened employees and customers, fired the firearm, and forced employees to give him money. When bank employee Peggy Sammons testified about the April and June robberies, she identified Munnerlyn as the man who was two to three feet in front of her when he pointed a gun at her and forced her to place money in his bag. Bank employee Kristy Searles testified that during the April and June robberies she was in the front of the bank and observed Munnerlyn rob the bank. She said that she saw the robber walk into the bank, pull up a mask, and then pull out his gun. Looking at a photograph from the April 1, 2004, robbery, Searles identified Munnerlyn as the robber in the photograph. Searles stated that during the June robbery, Munnerlyn's mask slid down and she saw part of his face. Bank employee John Barnes, who was present for all three robberies but admitted that he never got a good look at the robber, testified that he believed that the same man robbed the bank on all three occasions based on the robber's voice, the language used during the first two robberies, and the way the robberies were carried out.

*United States v. Munnerlyn*, 207 Fed.Appx. 91, 2006 WL 3039797 (6th Cir. October 25, 2006).

Petitioner timely appealed. He asserted the following claims:

> Munnerlyn argues that the district court erred by denying his motion for acquittal as to Counts 1, 2, 3, 4 and 6 because the evidence presented by the government was insufficient to support the conviction.
>
> \*\*\*
>
> Munnerlyn claims that it was unfairly prejudicial for the

> district court to allow the government to play a tape
> recording of his September 11, 2004, phone call from jail.
>
> \*\*\*
>
> Finally, Munnerlyn argues that the district court erred in
> admitting four taped phone conversations, including the
> September 11, 2004, conversation, because the government
> failed to establish a foundation for the recordings.

*See id.* On October 25, 2006, the United States Court of Appeals for the Sixth Circuit affirmed the judgment of this Court. *Id.*

On March 7, 2008, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2255. He asserts that he was denied the effective assistance of appellate counsel because his attorney failed properly to raise his objection to use of tape recordings against him at trial, and asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker,* 543 U.S. 220 (2005).

It is the position of the respondent that this action is time barred and that petitioner's claims are without merit.

## STATUTE OF LIMITATIONS

A one-year statute of limitations applies to the filing of motions under 28 U.S.C. §2255. 28 U.S.C. §2255 provides:

> A one-year period of limitations shall apply to a motion under
> this section. The limitations period shall run from the latest of-
>
> (1) the date on which the judgment of the conviction becomes
> final; (2) the date on which the impediment to making a motion
> created by governmental action in violation of the Constitution

3

> or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action; (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f). Here, petitioner's conviction became final on January 23, 2007, when the ninety-day time period expired to file a petition for a *writ of certiorari* to the United States Supreme Court. *Humphress v. United States,* 398 F.3d 855, 860 (6th Cir.2005), citing *Sanchez-Castellano v. United States,* 358 F.3d 424, 426 (6th Cir.2004). The statute of limitations expired one year later, on January 23, 2008. Petitioner indicates that he executed his §2255 petition on January 24, 2008. Petitioner's habeas corpus petition is dated January 20, 2008. Petitioner indicates in an affidavit attached to his §2255 motion that he initially placed his §2255 petition with prison officials for mailing on January 24 or 25, 2008, after he came out of lock down. *See Affidavit, attached to Petition*. The affidavit, somewhat inexplicably, is dated April 29, 2008 (perhaps it was executed on February 29, 2008). His petition was filed on March 7, 2008. Assuming, however, that petitioner delivered his §2255 petition to prison officials for mailing on January 24, 2008, *see Houston v. Lack,* 487 U.S. 266, 270-72 (1988)(prisoner's appeal is filed on the date of delivery to prison officials for mailing), his §2255 motion is one day late.

Petitioner contends that his habeas corpus petition was timely filed because the prison where he is housed was on lock down status for periods of time, and he had no

4

access to the law library or his legal materials during those times. He has attached in support of this contention a memorandum from Michael Garrett, the prison's complex warden, indicating that for security reasons, the FCC Coleman, USP-1, was on "lock down" status from October 24, 2007, to December 12, 2007, and again on January 7, 2008 to January 16, 2008. *See Exhibits to Petition.* In his response to the Return of Writ, petitioner has attached a letter from J.F. Carmen, the prison unit manager, indicating that the prison was on lock down status from January 7, 2008, until January 28, 2008.[1] *See Reply*. The record, however, fails to reflect that petitioner was unable to file a timely habeas corpus petition such that equitable tolling of the statute of limitations is appropriate.

"[P]etitioner bears the ... burden of persuading the court that he or she is entitled to equitable tolling." *Griffin v. Rogers,* 308 F.3d 647, 653 (6th Cir.2002). Equitable tolling should be used sparingly. *Cook v. Stegall,* 295 F.3d 517, 521 (6th Cir.2002); *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 560 (6th Cir.2000) (citations omitted). "Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Id.* at 560-61.

> The Supreme Court has explained that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has

---

[1] Carmen also indicates that the prison was on lock down status again from April 14, 2008 to April 21, 2008; July 8, 2008, to July 11, 2008; July 29, 2008, to August 25, 2008; and August 29, 2008 to September 22, 2008. *See Reply*.

> been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). However, "[w]e have generally been much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights." *Id.; cf. Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").

*Jurado v. Burt,* 337 F.3d 638, 642-43 (2003). In order to determine whether to equitably toll the statute of limitations, the Court must consider the following five factors:

> (1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim.

*Id.,* at 643, citing *Dunlap v. United States,* 250 F.3d 1001, 1008 (6th Cir.2001); *Andrews v. Orr,* 851 F.2d 146, 151 (6th Cir.1988).

There is no reason to conclude that petitioner lacked notice or constructive knowledge of the one-year filing requirement in habeas corpus cases, nor would he have been reasonable in remaining ignorant of the statute of limitations in habeas corpus cases, particularly since the one year statute of limitations had long been in effect prior to petitioner's judgment of conviction. Further, lack of actual notice, and "ignorance of the law, even for an incarcerated *pro se* petitioner generally does not excuse [late] filing." *Fisher v. Johnson,* 174 F.3d 710, 714-15 (5th Cir.1999); *see also United States v. Baker,* 197 F.3d 211, 218

(6th Cir.1999); *Rose v. Dole,* 945 F.2d 1331, 1335 (6th Cir.1991); *Winkfield v. Bagley,* 66 Fed.Appx. 578, unpublished, 2003 WL 21259699 (6th Cir. May 28, 2003).

> Even those not versed in the law recognize the centuries-old maxim that "ignorance of the law is no excuse." This maxim, deeply embedded in our American legal tradition, reflects a presumption that citizens know the requirements of the law. The benefits of such a presumption are manifest. To allow an ignorance of the law excuse would encourage and reward indifference to the law. Further, the difficulty in proving a defendant's subjective knowledge of the law would hamper criminal prosecutions.

*United States v. Baker, supra,* 197 F.3d at 218. The record fails to reflect the prison's lock down status prevented petitioner from litigating his claims during the time period at issue.

> Prison lockdowns are not normally considered extraordinary circumstances warranting equitable tolling of AEDPA's one-year statute of limitations. In *United States v. Ramsey,* 1999 U.S. Dist. LEXIS 13653, at *4 (E.D.Pa. Dec. 9, 1999), the court evaluated Ramsey's claim that he was limited for a brief time in his use of the legal library because of a lockdown. Ramsey had alleged that, due to the status of a prison lockdown that lasted from March 30, 1997 to April 1, 1997, and again from April 3, 1997 until April 20, 1997, he was unable to make phone calls or use the legal library. *Id.* at *6. The court found that despite the lockdown period, Ramsey had ample time prior to the lockdown to file his § 2255 motion (approximately two years before the enactment of AEDPA and another ten months after the enactment of AEDPA, prior to the lockdown). *Id.* at **6-7. The court further found that Ramsey did not argue that "he was prevented from writing his motion during the lockdown," nor that "he was prevented from utilizing the mail during the lockdown period." *Id.* at **7-8. Thus, the court held that without more, the brief period of lockdown did not rise to the level of an extraordinary circumstance. *Id.* at **8-9 (citing *Ego-Aguirre v. White,* 1999 U.S. Dist. LEXIS 3162, at *5 (N.D.Cal.

> March 12, 1999) (finding that 180 days of lockdown and limited library access do not support equitable tolling) and *Brooks v. Olivarez,* 1998 U.S. Dist. LEXIS 12239, at *2 (N.D.Cal. Aug. 5, 1998) (finding that AEDPA's one year limitation gives prisoners adequate time to file motion while leaving room for unpredictable lockdowns and interruptions in research and writing time common in prison)). Ramsey sought to appeal the decision, but the Third Circuit denied a certificate of appealability on December 29, 2000, "for essentially the reasons cited by the District Court." *United States v. Ramsey,* docket no. 99-1858, Order (3d Cir. Dec. 29, 2000).
>
> In *Perry v. Vaughn,* 2004 U.S. Dist. LEXIS 24094, at *15 (E.D.Pa. Oct. 17, 2003) *adopted by Perry v. Vaughn,* 2004 U.S. Dist. LEXIS 9829 (E.D.Pa. May 27, 2004), the court similarly held that a prison lockdown and restriction of library access alone do not constitute "extraordinary circumstances." In that case, the defendant alleged that there had been a 30-day temporary lockdown as a result of a prison riot, during which his personal property, including legal materials, was destroyed. *Perry,* 2004 U.S. Dist. LEXIS 24094, at *13. Moreover, conditions at the prison created a scheduling problem regarding access to the prison law library. *Id.* However, because the defendant could not demonstrate that these "circumstances actually impeded his ability to file a timely [motion]" by, for example, preventing him from writing his motion prior or utilizing the mail, he had not been prevented, in some extraordinary way, from asserting his rights. *Id.*
>
> Moreover, the court notes that Shabazz had almost four months after the last lockdown to prepare his motion, in addition to almost seven months prior to the lock down. The lockdown, in total, lasted only for a period of 41 days. Thus, Shabazz's claim that the prison was on lockdown for a period for a brief period of time, which prevented his access to the law library and legal assistance, without more, does not warrant a finding of extraordinary circumstances.

*United States v. Shabazz*, 2006 WL 2854301, *2-*3 (E.D. Pa. October 4, 2006). Similarly, here, nothing in the record reflects that petitioner was unable to access legal mail or writing or

preparing his motion due to the relatively brief periods that the prison was on lock down status. He had sufficient time prior to and between prison lock down dates within which to file a timely habeas corpus petition, and nothing indicates that he was unable to mail his petition during the prison lock down. To the contrary, petitioner states that he mailed his §2255 motion on January 24 or 25, 2008, as soon as the prison was no longer on lock down, even though the affidavit from J.F. Carmen, the prison unit manager, indicates that the prison remained on lock down status until January 28, 2008. See Reply. Further, petitioner appears to indicate that he wrote his §2255 motion on January 20, 2008, and during the time that he was without access to his legal material, or a typewriter, and apparently during the time that the prison remained on lock down status. *See also Atkins v. United States*, 204 F.3d 1086, 1089-90 (11th Cir. 2000)(prison lock down and misplaced legal papers did not justify equitable tolling of the statute of limitations); *Fitts v. Eberlin*, 2009 WL 1047052 (N.D. Ohio April 17, 2009)("allegations regarding insufficient library access... do not warrant equitable tolling."),[2] citing *United States v. Stone,* 68 F. App'x 563, 565 (6th Cir.2003); *Plaza,* 2008 WL

---

[2] The Court in *Fitts, supra*, stated:

Fitts has provided no evidence that he was denied access to resources over such a long period of time as to justify equitable tolling. And even were such resources denied to Fitts over an entire year, it is still his obligation to take all reasonable means necessary to protect his rights, including, if necessary, calling the clerk of court to inquire about how to protect his rights under the circumstances. *See Beltran-Sosa,* 2007 WL 854810, at *4 (failure to attempt to call court or inquire about status of appeal demonstrated a lack of diligence on the part of habeas prisoner); *Solomon v. United States,* 467 F.3d 928, 933 (6th Cir.2006) (inmate who called clerk of court twice to explain his predicament and inquire how to proceed in his habeas petition, among other circumstances, demonstrated diligence to protect his rights for purposes of equitable tolling).

9

5273899, at *6. In short, nothing in the record reflects that the lock down of the prison, which apparently was not an unusual event, prevented petitioner from timely filing his habeas corpus petition.

For all of the foregoing reasons, the Court concludes that the record fails to reflect that equitable tolling of the statute of limitations is appropriate. The Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED** as time barred.

If any party objects to this *Report and Recommendation,* that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation* de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,*

474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                    <u>/s/ Terence P. Kemp</u>
                                                    United States Magistrate Judge